COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Senior Judge Petty

BRIAN AARON FRAZIER

v.      Record No. 1954-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JANUARY 23, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(Gregory R. Sheldon; BainSheldon, PLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General; on brief), for appellee.


Following a jury trial, Brian Aaron Frazier was convicted of maliciously shooting at an

occupied vehicle (Code § 18.2-154). On appeal, Frazier asserts that the trial court erred in giving

a jury instruction on flight. He also argues that the evidence failed to prove that he was the

shooter or that he acted with malice. After examining the briefs and the record, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a). We find no abuse of discretion in granting the jury

instruction and conclude that Frazier failed to preserve his sufficiency challenges. So we affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In December 2020, Frazier was married to Shanta Simmons Frazier, and the couple was staying at a motel in Chesterfield County. One night, Shanta texted her mother, Bettie Simmons, asking Bettie to pick her up at the motel. Bettie went to the motel at about 7:20 a.m., parking her car outside the couple's room. Bettie texted Shanta that she had arrived. When Shanta did not appear after a few minutes, Bettie turned off the engine and heard Frazier and Shanta arguing.

Bettie heard a gunshot, looked up, and saw Frazier standing in the doorway about five feet away. From there, Frazier shot "at the door frame" of Bettie's car. Shanta ran out of the room and jumped in Bettie's car, and Bettie called 911 as she drove off. The police dispatcher told Bettie to drive to the nearest gas station.

Officer Beck responded to the call minutes later. After hearing where the incident occurred, Beck went to a gas station that was about 100-200 yards away from the motel. But he encountered Frazier there, not Bettie and Shanta. The gas station was closed. Officer Beck detained Frazier and read him his *Miranda* rights.[1] Frazier told Beck that he was just getting something to eat and drink. He said he had come from the motel, but he denied having had any confrontation with his wife.

After other officers arrived and stayed with Frazier, Officer Beck drove to the other gas station where Bettie and Shanta had stopped. Officer Beck took a statement from Bettie, who appeared "pretty mad," while Shanta was dismissive and "didn't really want to get involved."

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Beck saw two bullet holes in Bettie's car—one in the driver's side headlight and one in the metal framing of the driver's side windshield.

Officer Beck then returned to the gas station where Frazier was detained. Beck attempted to obtain a statement from Frazier, but Frazier was "dismissive" and "wanted a lawyer," so Beck stopped asking questions. Beck then drove to the motel.

After obtaining a search warrant,[2] Beck searched the motel room and discovered some of Frazier's personal items, a firearm in a trash can, and several live cartridges on the floor just inside the doorway. No spent shell casings were found. After completing the search of the room, Officer Beck spoke with Frazier again.

This time, Frazier wanted to talk and insisted that he had not asked for a lawyer. Frazier told Officer Beck that he believed he was being set up by Shanta's family. Beck obtained a search warrant for Frazier's DNA to compare it against "items" on the firearm discovered in the room. Officer Natasha Strickland swabbed Frazier's hand (while he was detained), as well as the firearm found in the room. Strickland also photographed the motel room and Bettie's car. She noticed outside the motel room what appeared to be a fragment of a headlight.

Frazier was arrested and charged with attempted murder (Code §§ 18.2-26/18.2-32), use of a firearm in the commission of attempted murder (Code § 18.2-53.1), and maliciously shooting into an occupied vehicle (Code § 18.2-154).

At trial, Bettie explained that she and Frazier had "issues." She described an incident that occurred a week before the motel incident. Frazier leaned against her car while she waited to pick up Shanta and said, "you think you this, you think you that, but I got you." Bettie feared that Frazier was going to "do something to [her]."

---

[2] The record neither contains the search warrant nor explains how Officer Beck obtained it, but Frazier does not challenge its validity on appeal. It appears that Beck obtained it remotely between the time of his initial contact with Frazier and his arrival at the motel.

Angie Rainey, a forensic scientist, testified that, after she compared the swab from the firearm to Frazier's DNA, Frazier "could not be eliminated as a contributor to the DNA mixture on the swab" of the firearm. A statistical analysis showed that it was 7.2 quintillion times more probable that Frazier was a contributor to the DNA mixture than a coincidental match to "an unrelated African American person." Douglas Degaetano, also a forensic scientist and expert in gunshot residue, testified that after examining the residue primer kit, Frazier had several particles on his hands consistent with his having recently discharged a firearm.[3]

After the Commonwealth rested, Frazier moved to strike only the "attempted murder and the use of a firearm charge." He argued that the Commonwealth failed to prove that he acted with the specific intent to kill Bettie, rather than simply shoot at her car. The trial court denied Frazier's motion to strike and, after Frazier put on no evidence, denied Frazier's renewed motion to strike.

During the charging conference, Frazier objected to the Commonwealth's jury instruction on flight, arguing that there was insufficient evidence to support it.[4] He said that the evidence showed only that he was at the gas station getting food and that there was "no evidence that he was aware that law enforcement was called." The trial court allowed the instruction.

The jury found Frazier guilty of maliciously shooting into an occupied vehicle but acquitted him of attempted murder and use of a firearm in commission of an attempted murder.

---

[3] Degaetano found "nine particles that were characteristic of primer residue . . . on the right-hand sampling device" and the "same thing on the left-hand sampling device." He said that ten was the highest number of particles he had seen in other cases.

[4] The instruction read: "If a person leaves the place where a crime was committed to avoid prosecution, detection, apprehension, or arrest, this creates no presumption that the person is guilty of having committed the crime. However, it is a circumstance which you may consider along with the other evidence." The language tracks Virginia Criminal Model Jury Instruction No. 2.300.

The court sentenced him to ten years' incarceration with three years suspended. Frazier noted a timely appeal.

ANALYSIS

### A. The Flight Instruction (Assignment of Error A)

Frazier claims that the trial court erred in granting the flight instruction. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). We review a trial court's decision to grant or deny an instruction for abuse of discretion. *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022). "An instruction must be supported by 'more than a scintilla' of evidence viewed in the light most favorable to the proponent," here, the Commonwealth. *Nottingham v. Commonwealth*, 73 Va. App. 221, 228 (2021) (quoting *Turman v. Commonwealth*, 276 Va. 558, 564 (2008)).

Frazier argues that the evidence did not support a flight instruction because he did not flee from law enforcement after they encountered him at the gas station and no evidence showed that he was aware that law enforcement had been called. The fact he left his personal property in the motel room shows, he claims, that he intended to return, not flee. He also complains that it was improper for the Commonwealth to wait until its rebuttal argument to mention the flight instruction to the jury. We are not persuaded.

A defendant's "acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial[] and a jury may be instructed that it could consider such acts." *Graves v. Commonwealth*, 65 Va. App. 702, 709 (2016) (alteration in original) (quoting *Turman*, 276 Va. at 564). Flight evidence can be considered by the jury "along with the other facts and circumstances tending to establish . . . guilt," *Anderson v. Commonwealth*, 100 Va.

860, 863 (1902), and the jury can give the flight "whatever weight [the jury] deems proper under the circumstances," *Graves*, 65 Va. App. at 709. The "'flight' is the action of the alleged offender *after* the commission of the crime, not the crime itself." *Id.* (citing *Turman*, 276 Va. at 565-66). So a flight instruction that properly states the law is "appropriate when the evidence supports it, depending on the case and its relation to the charged offense." *Id.* (finding flight instruction not warranted because the offense being tried already included a flight element).

The flight instruction here was proper because the evidence supports a reasonable inference that Frazier fled the motel to avoid detection. Minutes after shooting at Bettie's car, Frazier was apprehended by Officer Beck 100 to 200 yards away. *See Anderson*, 100 Va. at 863 ("The nearer [the flight] to the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape[] or . . . evade prosecution . . . ."); *Thomas v. Commonwealth*, 279 Va. 131, 147-48, 168 (2010) (finding sufficient evidence for a flight instruction when the defendant left dead a body at the scene, went to a grocery store, and began driving to another state). After Officer Beck detained him, Frazier said he was there to get something to eat and drink, but the gas station was closed. Frazier also falsely denied having had any altercation at the motel. *See Clagett v. Commonwealth*, 252 Va. 79, 93-94 (1996) ("Flight . . . includes . . . any action, even of short duration, intended to disguise one's identity and distance oneself from the crime.").

That Frazier did not flee from the police upon encountering them or know that the police had been called does not preclude the reasonable inference that he had fled the scene of the crime. *See Schlimme v. Commonwealth*, 16 Va. App. 15, 19 (1993) (affirming trial court's granting of flight instruction even though the defendant had no knowledge of the charges against him when he fled). Nor does the fact that Frazier left some belongings at the motel room preclude the inference that he fled the scene. *See Clagett*, 252 Va. at 93-94 (defendant's

voluntary return to Virginia within one day did not negate evidence of flight). Indeed, the jury could properly find that Frazier fled from the motel room; his handgun was found hidden in the trash can and unfired cartridges were left scattered just inside the doorway.

Finally, Frazier did not object when the Commonwealth mentioned Frazier's flight in its closing rebuttal argument. So that argument is waived. Rule 5A:18. In any event, Frazier cites no authority supporting his claim that an otherwise proper jury instruction is rendered improper when the prosecution waits until rebuttal to mention it.

In short, the trial court did not abuse its discretion in granting the flight instruction.

### B. Sufficiency of the Evidence (Assignments of Error B-C)

Frazier also challenges the sufficiency of the evidence to prove that he acted with malice and that he shot at Bettie's vehicle. These claims have also been defaulted.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own . . . ." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

In his motion to strike, Frazier did not preserve the arguments that he advances on appeal. Frazier challenged only the sufficiency of the evidence to prove attempted murder and use of a firearm in the commission of attempted murder—the two crimes of which Frazier was acquitted. Frazier told the trial court, "I do have a motion to strike on the attempted murder and the use of a firearm charge." He asked to strike only "the evidence with respect to those two charges." He never mentioned the malicious shooting charge—the conviction he appeals here. After putting

on no evidence, Frazier renewed his motion to strike. But that motion was limited to the same arguments as before.

Frazier does not seek to excuse the default by invoking the good-cause or ends-of-justice exceptions to Rule 5A:18, and we will not apply either exception sua sponte. *Canales v. Commonwealth*, 78 Va. App. 353, 363 n.6 (2023). Thus, Rule 5A:18 bars our consideration of Frazier's second and third assignments of error.

CONCLUSION

In short, the trial court did not abuse its discretion by granting a flight instruction, and Frazier's remaining claims have been defaulted.

*Affirmed*.