# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia


HEATH LIMUEL JONES

MEMORANDUM OPINION* BY
v.          Record No. 1696-22-2          JUDGE FRANK K. FRIEDMAN
MAY 7, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

John W. Parsons (John W. Parsons, Attorney at Law, on brief), for
appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Heath Limuel Jones of unlawful wounding and destruction of property.

On appeal, Jones challenges the sufficiency of the evidence to sustain his convictions and the trial

court's refusal of certain jury instructions. Finding no error, we affirm.

## BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

On the evening on October 10, 2021, Kenny Sanchez and eight friends—"Kenzie" and her boyfriend, Jack Parham; Charles Mason; Steven Gowan; "Austin"; "Kiera"; and Markus Cook and his girlfriend, Savannah Stewart—gathered in a Walmart parking lot to "hang out." Unarmed, Sanchez and his friends stood beside Cook's "RV" and Sanchez's car listening to music. Jones and his wife, Lori, were inside a pickup truck parked nearby. Sanchez and his friends did not know Jones or Lori, and the two groups did not interact for several hours.

Later that night, Sanchez and Kenzie argued for several minutes but did not "touch" each other. Lori, who had been watching the argument, exited the pickup truck and approached Sanchez. Lori accused Sanchez of "hurting" Kenzie and stood between them. Sanchez denied harming Kenzie and told Lori to "go away," but Lori became upset and "refused" to leave. She "got in [Sanchez's] face" and began "screaming" at him, so Kenzie attempted to stand between them and inform Lori that Sanchez did not hit her. As she did so, Lori "punch[ed]" Kenzie's face and she fell.

Sanchez pushed Lori to prevent her from continuing to punch Kenzie. When Lori fell, Jones retrieved a steel "rebar" from the bed of his truck and approached Sanchez, yelling, "Don't touch my wife. Get away from my wife." Sanchez ran a few feet away to avoid Jones. Meanwhile, Lori "got on top" of Kenzie and continued to "beat[] her" with her fists. Sanchez "tried to separate" them but could not. Sanchez's friend, Kiera, also tried to "assist" him, but Lori pulled her to the ground and "started beating" her.

Ignoring Sanchez's friends' pleas to drop the rebar, Jones walked toward Sanchez brandishing the weapon and screamed that he was "going to hit" him. As Sanchez retreated, he saw Lori "knock[]" Kenzie unconscious and "stomp[] on" her head before climbing on top of Kiera, who was still on the ground. Fearing for his friends' safety, Sanchez approached Lori and attempted to pull her away from Kiera. As he did so, Sanchez saw Jones approach Kiera brandishing the rebar "like he was going to hit" her, so Sanchez "blocked Kiera" with his body to

- 2 -

absorb the blow. Jones yelled, "Get off my wife" and swung the rebar with both hands, striking the back of Sanchez's head. Jones's blow knocked Sanchez unconscious. Jones then smashed the rear window and side mirror of Sanchez's car with the rebar and scratched the driver's side window. While Jones attacked the car, none of Sanchez's group approached him. Nonetheless, Jones warned Sanchez's friends that he would "hit them with the rebar . . . if they intervened." Besides Kenzie and Kiera, Sanchez's friends were not involved in the fight and did not touch or threaten Jones or Lori during the incident.

Soon thereafter, police arrived in the parking lot in response to a reported assault. Sanchez was transported to a hospital, where he received eight "staples" to repair a "large laceration" on the back of his head. At trial, Sanchez had visible scarring from the wound and he testified that he had suffered occasional headaches for about two months after the attack.

After arriving in the parking lot, police interviewed Jones, who denied involvement in the fight. Jones claimed that he had been sleeping in his truck when he "heard a commotion," so he exited his truck, "looked up," and saw "a bunch of cops." Jones denied attacking Sanchez or seeing Lori attack anyone. Jones was charged with malicious wounding and destruction of property.

At the conclusion of the Commonwealth's evidence, Jones moved to strike the malicious wounding charge on three alternative grounds. First, he asserted the evidence established that he hit Sanchez with the rebar in defense of his wife and, therefore, the charge should be struck. Second, he argued that he hit Sanchez in the heat of passion, which negated malice and thus required reducing the charge to unlawful wounding. Third, he argued that he could be convicted only of assault and battery because the evidence failed to prove that he had the specific intent to maim, disfigure, disable, or kill Sanchez. In addition, Jones moved to strike the destruction of property charge, arguing that the evidence failed to exclude his reasonable hypothesis of innocence that he damaged Sanchez's truck in defense of his wife. The trial court denied the motion.

Lori, a convicted felon, testified as a defense witness that she and Jones were "minding [their] own business" in their truck when she heard Sanchez and Kenzie arguing. Lori claimed that she saw Sanchez grab Kenzie's neck, so she approached them to inquire whether Kenzie was "okay." When Sanchez told her to "mind [her] own business" and she refused to leave, Sanchez "shoved" Lori and she fell. Lori became upset, got up, and pushed Sanchez. Kenzie and Kiera then attacked her, and they "brawl[ed]" on the ground. Lori admitted that while she was on top of one of the women, someone "pulled" her from behind and told her to "get[] off." She also admitted that she drank two beers before the incident. Lori nevertheless maintained that Sanchez and Kenzie attacked her and she did not see Jones hit Sanchez with the rebar.

The trial court denied Jones's renewed motion to strike made on the same grounds. After closing arguments, the jury convicted Jones of unlawful wounding as a lesser-included offense of malicious wounding and destruction of property. The trial court denied Jones's subsequent motion to set aside the verdicts made on the same grounds as Jones's motions to strike. Jones appeals.

ANALYSIS

I. Sufficiency

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

(2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A. Unlawful Wounding

Jones challenges the sufficiency of the evidence to sustain his unlawful wounding conviction on two grounds. First, he asserts he could be convicted only of the lesser-included offense of assault and battery because the evidence failed to establish that he had the specific intent to maim, disfigure, disable, or kill Sanchez. Alternatively, Jones asserts that the evidence established that he hit Sanchez with the rebar in defense of Lori, entitling him to acquittal. We disagree.

### 1. Intent to Maim, Disfigure, Disable, or Kill

To prove malicious wounding under Code § 18.2-51, the Commonwealth must establish beyond a reasonable doubt that the defendant "wound[ed] or injure[d] a victim 'with the intent to maim, disfigure, disable, or kill'" him. *Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015) (quoting Code § 18.2-51). The defendant must "intend to permanently, not merely temporarily, harm another person." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (quoting *Johnson v. Commonwealth*, 53 Va. App. 79, 101 (2008)). "If the defendant acts with malice, he is guilty of malicious wounding, a Class 3 felony." *Williams*, 64 Va. App. at 248. "If he acts *without* malice— but still commits a legally unjustified [or excused] wounding with the intent to maim, disfigure, disable, or kill—he is guilty of the lesser-included offense of unlawful wounding, a Class 6 felony." *Id.* (citing *Shifflett v. Commonwealth*, 221 Va. 191, 193 (1980)). "'Assault and battery,' like unlawful wounding, 'is a lesser-included offense of malicious wounding.'" *Witherow v. Commonwealth*, 65 Va. App. 557, 570 (2015) (quoting *Boone v. Commonwealth*, 14 Va. App. 130,

132 (1992)). "While a conviction for assault and battery cannot stand without evidence showing 'an intention to do bodily harm – either actual intention or an intention imputed by law, . . . an intent to maim, disfigure or kill is unnecessary to the offense.'" *Id.* (alteration in original) (quoting *Boone*, 14 Va. App. at 133).

"Intent, like any fact, may be shown by circumstances." *Commonwealth v. Vaughn*, 263 Va. 31, 36 (2002). "Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him." *Carter v. Commonwealth*, 280 Va. 100, 105 (2010). Whether the defendant possessed the requisite intent is a question of fact. *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997). The "factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993).

It is well-established that "[i]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her [voluntary] actions." *Perkins*, 295 Va. at 330 (first alteration in original). Accordingly, "'an intent to maim, disfigure or kill may be presumed' when an attack is 'attended with . . . violence and brutality.'" *Boone*, 14 Va. App. at 133 (alteration in original) (quoting *Fletcher v. Commonwealth*, 209 Va. 636, 640-41 (1969)). Similarly, such intent "'may be' inferred from the use of a deadly weapon." *Witherow*, 65 Va. App. at 571 (quoting *Williams v. Commonwealth*, 13 Va. App. 393, 398 (1991)). A deadly weapon is "one which is likely to produce death or great bodily injury from the manner in which it is used," and may include instruments such as "metal bars and rods." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507-08 (2020) (quoting *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946)).

2. The Commonwealth Established the Requisite Intent

When Sanchez attempted to restrain Lori to prevent her from attacking Kenzie, Jones became enraged, armed himself with the rebar, approached Sanchez from behind, and swung the

rebar with both hands, striking the back of Sanchez's unprotected head and causing a large laceration that required several staples to repair. Jones's use of the rebar to strike a sensitive and vulnerable part of Sanchez's body demonstrates that he used the rebar as a "deadly weapon." *Fletcher*, 72 Va. App. at 508; *Hampton v. Commonwealth*, 34 Va. App. 412, 420 (2001) (recognizing that a sidewalk curb could be a deadly weapon when used to "bash[]" the victim's head). Moreover, it supports the conclusion that he intended the natural and probable consequence of using two hands to strike a victim on the back of the head with a metal rod—maiming, disfiguring, disabling, or death. *Cf. Burkeen*, 286 Va. at 261 (holding that the evidence proved the defendant's specific intent to maim where "the victim did nothing to provoke the attack, and he was hit with extreme force in a vulnerable area of his body while he was defenseless and not expecting such a blow"). Thus, the evidence was sufficient to demonstrate that Jones possessed the requisite intent.

### 3. Defense of Others

The defense of others "is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith*, 17 Va. App. at 71). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in [defense of others] is a question of fact." *Id.* The trial court's "factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them." *Smith*, 17 Va. App. at 71.

"[A] person asserting a claim of defense of others may do so only where the person to whose aid he or she went would have been legally entitled to defend himself or herself." *Foster v. Commonwealth*, 13 Va. App. 380, 385 (1991). Accordingly, "[t]he defense of others 'is commensurate with self-defense.'" *Colas v. Tyree*, 302 Va. 17, 29 (2023) (quoting *Foster*, 13 Va. App. at 385). "A claim of self-defense may be either justifiable or excusable; if it is either, the

accused is entitled to an acquittal." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998), *aff'd*, 257 Va. 239 (1999). In the analogous context of homicide in self-defense, the Supreme Court of Virginia has held that "[j]ustifiable homicide in self-defense occurs where a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or great bodily harm to himself." *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958) (emphasis added). "In such a case, the defendant need not retreat, but is permitted to stand his ground and repel the attack by force, including deadly force, if it is necessary." *Foote v. Commonwealth*, 11 Va. App. 61, 67 (1990) (quoting *McCoy v. Commonwealth*, 125 Va. 771, 775 (1919)). Conversely,

> [e]xcusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked *retreats as far as possible, announces his desire for peace* and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

*Bailey*, 200 Va. at 96 (emphasis added).

Here, the evidence permitted the jury to reject Jones's proffered defense-of-others theory. To begin, the record firmly established that Lori was "at fault" in provoking the affray. *Id.* at 95. Sanchez and Kenzie argued but did not touch each other. Nevertheless, Lori confronted Sanchez and accused him of "hurting" Kenzie. When Sanchez denied harming Kenzie and told Lori to "go away," Lori became upset and "refused" to leave. She "got in [Sanchez's] face," screamed at him, and punched Kenzie's face when she tried to intervene. Thus, Lori "created the [very] situation which [ultimately] resulted" in Jones striking Sanchez with the rebar. *Hughes*, 39 Va. App. at 464. *See also Foster*, 13 Va. App. at 386 (holding that the defendant was not entitled to jury instruction on defense of others where he defended an inmate during a fight the inmate instigated). Moreover, although Sanchez pushed Lori to prevent her from continuing to attack Kenzie, Lori did not "retreat[] as far as possible" and "announce[] [her] desire for peace." *Bailey*, 200 Va. at 96. To the

- 8 -

contrary, she continued to attack Kenzie and beat her unconscious. When Sanchez attempted to restrain Lori, Jones approached him from behind and struck his head with the rebar. Considering those circumstances, the record supports the rejection of Jones's defense-of-others theory.

B. Destruction of Property

Jones also contends that the evidence was insufficient to sustain his conviction for destruction of property because it failed to exclude his reasonable hypothesis of innocence that he damaged Sanchez's vehicle to defend Lori. We do not consider Jones's argument because his brief fails to comply with Rule 5A:20(e). An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). Accordingly, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).

Beyond a bare reference to the standard of review and statute under which he was convicted, Jones's brief includes no citation to authority or any principle of law to support his argument that damaging property is permissible when done for the "good reason" of creating a "display of force" to prevent further bodily harm to another.[1] Thus, his argument is waived.[2]

---

[1] Jones's brief cites no authority in support of the legal theory he advances, and this Court has observed that it is not an appellate tribunal's role to find authority supporting an appellant's position. *See Fadness v. Fadness*, 52 Va. App. 833, 850 (2008) ("The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

[2] In addition to the absence of legal authority for Jones's position, when we view the evidence in best light to the prevailing party, there is no factual support for Jones's position either. The jury flatly rejected Jones's claims that he struck his victim's car to prevent other attacks. The record supports this conclusion.

II. Jury Instructions

Before closing arguments, the trial court provided a "waterfall" instruction to the jury

defining the offense of malicious wounding and the lesser-included offenses of unlawful wounding

and assault and battery.[3]  The court instructed the jury, "If you have a reasonable doubt as to the

---

[3] Instruction 14 provided as follows:

> The defendant is charged with the crime of malicious wounding.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1)  That the defendant cut or wounded [Sanchez]; and
>
> (2)  That such cutting or wounding was with intent to kill or permanently maim, disfigure, disable [Sanchez]; and
>
> (3)  That the act was done with malice.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty of malicious wounding, but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged, but that the act was done unlawfully, and not maliciously, then you shall find the defendant guilty of unlawful wounding, but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.
>
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt either malicious wounding or unlawful wounding, but you do find beyond a reasonable doubt that:
>
> (1)  That the defendant willfully touched [Sanchez] without legal excuse or justification; and
>
> (2)  That the touching was done in an angry, rude, insulting or vengeful manner,

- 10 -

grade of the offense, then you must resolve that doubt in favor of the defendant, and find him guilty

of the lesser offense."

In addition, the trial court instructed the jury on malice, heat of passion, and defense of

others. Specifically, Instruction 11 defined "malice" and stated, in part, that "[h]eat of passion

excludes malice when that heat of passion arises from provocation that reasonably produces an

emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to cause one

to act on impulse without conscious reflection." Instruction 16 defined defense of others as follows:

> If you believe from the evidence that the Lori Jones was
> without fault in provoking or bringing on the fight, and you further
> believe that:
>
> > (1) Defendant reasonably feared, under the circumstances as
> > they appeared to him, that Lori Jones was in imminent
> > danger of bodily harm; and
> >
> > (2) Defendant used no more force, under the circumstances
> > as they appeared to him, than was reasonably necessary
> > to protect Lori Jones from the perceived harm,
>
> then he acted in defense of another, and you shall find the defendant
> not guilty.

The trial court also instructed the jury that it could "infer that every person intends the

natural and probable consequences of his acts." Additionally, the court provided Instruction 10,

which defined a "deadly weapon" and stated, "You may, but are not required, to infer malice from

the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as

to whether malice existed."

---

> then you shall find the defendant guilty of assault and battery, but
> you shall not fix the punishment until your verdict has been returned
> and further evidence has been heard by you.
>
> If you find that the Commonwealth has failed to prove
> beyond a reasonable doubt any of the above crimes, then you shall
> find the defendant not guilty.

The trial court refused three jury instructions that Jones requested. First, Jones requested the following instruction:

> Even though you may believe from the evidence beyond a reasonable doubt that the defendant did the acts charged against him, the burden is also upon the Commonwealth to prove by the evidence beyond a reasonable doubt that the defendant did any such acts with the intent to maim, disfigure, disable or kill [Sanchez].
>
> You cannot presume any such intent from the acts of the defendant if those acts do not naturally bespeak such intent. If you have a reasonable doubt as to whether such intent can be inferred from any such acts of the defendant, then, even though you may believe that the defendant did the acts, you cannot find him guilty of any offense greater than assault and battery.

He argued that the instruction clarified that the jury did not have to presume that he intended the "probable consequences" of his actions and reminded the jurors of their obligation to find him guilty of a lesser-included offense of malicious wounding if they had a reasonable doubt regarding his intent.

Second, Jones asked to instruct the jury that "[i]t is a husband's duty to protect his wife, and in doing so he may injure another in her defense." He asserted that the instruction was necessary to clarify Instruction 16, defining defense of others.

Lastly, Jones requested an instruction stating, "The word 'disfigure' means a permanent and not merely a temporary and inconsequential disfigurement. Similarly, the word 'disable' must refer to a permanent, not a temporary disablement." He argued the instruction emphasized that malicious wounding required proof that he specifically intended to wound Sanchez permanently, rather than temporarily.

The trial court found that Jones's proffered instructions were duplicative of the granted instructions. Accordingly, the trial court refused them. On appeal, Jones contends that the trial court abused its discretion by refusing his proffered jury instructions. He asserts that each

instruction accurately stated the law, was supported by the evidence, and was necessary to clarify the other instructions. We disagree.

This Court "review[s] a trial court's decision to [grant or] refuse a jury instruction for abuse of discretion." *Payne v. Commonwealth*, 65 Va. App. 194, 203 (2015) (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)). Its "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991). Nevertheless, the burden is on the proponent of the instruction "to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." *Shaikh v. Johnson*, 276 Va. 537, 546 (2008). When reviewing "the propriety of a particular instruction," this Court considers "the instructions as a whole." *Graves v. Commonwealth*, 65 Va. App. 702, 707 (2016) (citing *Hodge v. Commonwealth*, 217 Va. 338, 346-47 (1976)). "[W]hether an instruction 'accurately states the relevant law is a question of law' that the appellate court reviews *de novo*." *Banks v. Commonwealth*, 67 Va. App. 273, 281 (2017) (quoting *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014)).

Under those principles, we have held that "[i]f the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Joseph v. Commonwealth*, 249 Va. 78, 90 (1995)). Here, as discussed above, each of the proffered instructions was "fully and fairly covered" by the granted

instructions.  *Id.*  Accordingly, the trial court did not abuse its discretion in refusing Jones's proffered instructions.

## CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed*.